CLARA PICKEL ET AL. *v.* AUTOMATED WASTE
DISPOSAL, INC., ET AL.
(AC 20592)

Foti, Spear and Freedman, Js.

Argued April 23—officially released August 21, 2001

*Harry Cohen,* with whom was *Murray J. Kessler,* for the appellant (named plaintiff).

*John B. Farley,* with whom, on the brief, were *Reed A. Slatas* and *Stephen H. Broer,* for the appellee (named defendant).

*Edward V. Walsh,* for the appellee (defendant DeVivo Industries, Inc.).

*Opinion*

FOTI, J. The plaintiff, Clara Pickel,[1] appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants, Automated Waste Disposal, Inc. (Automated Waste), and DeVivo Industries, Inc. (DeVivo). On appeal, the plaintiff claims that the court improperly (1) deprived her of a fair trial because of its abusive conduct, (2) ruled on certain evidence and (3) refused to allow her to make an offer of proof. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 15, 1994, Automated Waste delivered a dumpster to the United States Postal Service office at 23 Backus Avenue, Danbury, pursuant to a contract for waste removal. DeVivo allegedly manufactured and sold the dumpster to Automated Waste. On October 29, 1994, the plaintiff, while acting in the course of her employment for the United States Postal Service, went to empty some trash into the dumpster. As she was emptying the trash, the lid to the dumpster suddenly struck her on the head. The blow caused the plaintiff to fall to the ground, where she remained unconscious until help

---

[1] The plaintiff's husband, Charles Pickel, also was a plaintiff, but he withdrew his claim prior to trial. We therefore refer in this opinion to Clara Pickel as the plaintiff.

arrived. The plaintiff sustained serious personal injuries.

By way of a two count amended complaint dated January 3, 2000, the plaintiff alleged products liability claims against Automated Waste and DeVivo. On January 27, 2000, the jury returned a verdict in favor of the defendants on both counts. The court accepted the verdict. On February 2, 2000, the plaintiff filed a motion to set aside the verdict and for a new trial. The defendants each filed an objection to the plaintiff's motion on the basis of its lack of specificity. The court sustained the defendants' objections. On February 22, 2000, the plaintiff filed an amended motion to set aside the verdict and for a new trial. On February 25, 2000, after a hearing on the matter, the court denied the plaintiff's motion, and this appeal followed. Additional facts will be provided as necessary.

I

The plaintiff first claims that the court denied her a fair trial by reason of the abusive conduct of the trial judge. Specifically, the plaintiff claims that during the course of the trial, the judge displayed episodes of prejudice, anger and hostility in the tone of his voice against the plaintiff.[2] The plaintiff further claims that the court

[2] The plaintiff takes issue with many statements made by the court to her counsel. The statements that the plaintiff takes issue with include: "Mr. Cohen, just give your opening statement. Stop the theatrics." "Mr. Cohen, sit down. That's not a proper question, and you know it." "Mr. Cohen, ask the questions without the theatrics. . . . I'm not going to tell you that again. Now, finish your cross-examination." "No, you're not going to use the exhibit. . . . Now, do it. Without the theatrics." All of those statements were made in the presence of the jury. The plaintiff argues that those remarks and others made the plaintiff appear insincere, made her case look exaggerated and suggested that her case should not be believed.

Additionally, the plaintiff claims that the following remarks, made *outside the presence of the jury*, exemplify the judge's hostility toward her. In response to the plaintiff's counsel asking for a minute of time, the judge stated: "No, you can't have a minute. Get back here and ask questions." During argument by counsel regarding the admissibility of a certain exhibit, the court admonished the plaintiff's counsel for interrupting the court. The

did not display hostility toward the defendants. The plaintiff concedes that she did not preserve the issue at trial. She argues that her claim is reviewable, however, under the plain error doctrine.[3]

We begin by stating the applicable standard of review. "It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial. *Gillis* v. *Gillis*, 214 Conn. 336, 343, 572 A.2d 323 (1990); Practice Book § [60-5]. We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal. *Timm* v. *Timm*, 195 Conn. 202, 205, 487 A.2d 191 (1985); *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 616, 236 A.2d 466 (1967).

---

judge stated: "Excuse me. Once again, if there's any further interruption, there will be a finding of contempt and there will be a fine. Understood? Is there any ambiguity in that?" On another occasion, the court stated: "No, I'm telling you [that you] have not been prepared for the last two days. That's what I'm telling you. Listen to what I'm telling you. I'm telling [you that] you're going to be here until five o'clock. You're going to get these bills done and you're going to get them done properly, and this trial is going to be conducted properly. And I'm not going to put up with any more of this chicanery. But there will be some findings that I guarantee that you won't like." All of the court's references to "chicanery" claimed by the plaintiff as harmful occurred *outside the presence of the jury.*

[3] The defendants argue that the plaintiff waived her right to appellate review by not moving for disqualification of the judge or for a mistrial. Nevertheless, the plaintiff claims review under the plain error doctrine. We will review the plaintiff's claims under the plain error doctrine because "[t]he court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Practice Book § [60-5]. Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Keans* v. *Bocciarelli*, 35 Conn. App. 239, 245 n.1, 645 A.2d 1029, cert. denied, 231 Conn. 934, 650 A.2d 172 (1994).

This court has also recognized, however, that a claim of judicial bias strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary. . . . *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. Id., 168–69; *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975); see *State* v. *Conroy*, 194 Conn. 623, 633, 484 A.2d 448 (1984). We review this claim, therefore, only under a plain error standard of review." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 792–93, 621 A.2d 267 (1993).

"A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . He may, of course, take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct. . . . A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. . . . A judge, trying the cause without a jury, should be careful to refrain from any statement or attitude which would tend to deny the defendant a fair trial. . . . It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Citations omitted; internal quotation marks omitted.) *Cameron* v. *Cameron*, supra, 187 Conn. 169.

We have reviewed the transcripts and the audiotapes that the plaintiff filed with this court, and we conclude that the statements made by the trial judge did not

constitute plain error.[4] The comments with which the plaintiff takes issue occurred sporadically during the course of the trial and were not pervasive throughout the entire trial. Indeed, the audiotapes did not indicate an unusual or an unreasonable tone on the part of the judge. Moreover, the statements, on their face, do not indicate a pattern of bias by the court. Many of the examples of the court's alleged abusive conduct took place outside the presence of the jury and, although brusque at times, the comments were justified under the circumstances. The comments do not indicate partiality on the part of the judge. Rather, on the basis of their context, the comments were made in an effort to control the progress of the trial. We conclude, therefore, that the plaintiff has not established that the statements or attitude of the judge created an atmosphere of bias warranting a finding by this court of plain error.

## II

The plaintiff next raises several evidentiary claims. Specifically, the plaintiff claims that the court improperly (1) refused to allow into evidence testimony of a lay witness regarding the unsafe condition of the dumpster, (2) excluded certain business records, (3) allowed the defendants' medical expert to testify regarding the contents of documents that were not in evidence and (4) refused to admit, on the ground that it was premature, testimony by witnesses for the plaintiff concerning the malfunction and the defective condition of the dumpster where such testimony had been offered prior to any testimony concerning the plaintiff's injuries. We will address each of the plaintiff's claims in turn.

---

[4] On July 12, 2000, this court granted the plaintiff's motion for production of audiotapes from the trial.

## A

The plaintiff first claims that the court refused to allow into evidence testimony of a lay witness as to the unsafe condition of the dumpster. We disagree.

During the course of the trial, the court refused to allow into evidence testimony of lay witnesses Thomas Montesi, Carl Kaltenstein and Frank Grailich, who were going to testify regarding the operation, mechanics and unsafe condition of the lid of the dumpster. The plaintiff claims that the court refused to allow their testimony on the ground that an expert was necessary. The plaintiff argues that expert testimony was not required because lay witnesses could reach an opinion on the basis of their personal knowledge.

### 1

The following additional facts and procedural history are helpful to our resolution of the plaintiff's claim. The plaintiff sought to introduce an accident report about a prior incident involving Montesi in which he was injured by a dumpster on April 9, 1994, at the same location where the plaintiff was injured. The court excused the jury, whereupon the plaintiff made an offer of proof. The plaintiff sought to establish a similarity of circumstances between her accident and Montesi's.

The plaintiff's counsel sought to introduce Montesi's accident report as a business record. During the offer of proof, Montesi testified that while he was emptying trash into the dumpster, the wind blew the lid down onto his wrists. Montesi was unable to testify that the dumpster that injured him was the same dumpster that injured the plaintiff. Moreover, Montesi testified that he did not know if the dumpster was the same color as the one that injured the plaintiff.

The court found for purposes of argument that the accident report qualified as a business record under

General Statutes § 52-180. The court concluded, however, that the proffered evidence was not relevant and that it lacked a foundation. Montesi had testified that the wind was blowing on the date of his accident. The plaintiff, however, had not yet testified as to the weather conditions on the date of her injury. The court ruled that Montesi's incident was not relevant to the plaintiff's case because it happened several months prior to the plaintiff's injury. The court stated that the dumpster may not have been the same one that injured the plaintiff and that the similarity of the circumstances was not established because the plaintiff had not yet testified as to the conditions as they existed at the time of her injury. The court sustained the defendants' objections as to the admissibility of the report as a full exhibit and marked it only for identification at that time.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . .

"Evidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . It is well settled that questions of relevance are committed to the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Puchalsky* v. *Rappahahn*, 63

Conn. App. 72, 76–77, 774 A.2d 1029, cert. denied, 256 Conn. 931, 776 A.2d 1147 (2001).

"Evidence of other similar accidents is admissible 'to prove the existence of a particular physical condition, situation, or defect.' C. McCormick, Evidence (3d Ed. [1984]) § 200 [p. 587]; *Zheutlin* v. *Sperry & Hutchinson Co.*, 149 Conn. 364, 179 A.2d 829 (1962); *Facey* v. *Merkle*, 146 Conn. 129, 136, 148 A.2d 261 (1959); *Wilkins* v. *G. Fox & Co.*, 125 Conn. 738, 7 A.2d 434 (1939). A party attempting to offer evidence of prior accidents or 'evidence of the experience of others' has the burden of proving 'that the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff. *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221, 226, 10 A.2d 600 [1940]; *Wilkins* v. *G. Fox & Co., Inc.*, [supra, 739]; *Shuchat* v. *Stratford*, 125 Conn. 566, 571, 7 A.2d 387 [1939] . . . .' *Zheutlin* v. *Sperry & Hutchinson Co.*, supra, 366–67. '[W]e cannot ignore completely that when a claim is made for the showing of prior accidents, an element of a trial on collateral issues, sometimes termed a trial within a trial, is introduced with [the] real possibility of undue delay.' *Kelsay* v. *Consolidated Rail Corporation*, 749 F.2d 437, 443 (7th Cir. 1984). Moreover, '[e]vidence of prior occurrences will be admitted only if the proffering party first lays a sufficient foundation of "substantial similarity of conditions" between the immediate and the prior happenings.' *Marois* v. *Paper Converting Machine Co.*, 539 A.2d 621, 625 (Me. 1988). 'The question whether the essential preliminaries have been established is for the court, and the court's decision will not be disturbed unless there is clear and manifest error.' *Zheutlin* v. *Sperry & Hutchinson Co.*, supra, 367." *Hall* v. *Burns*, 213 Conn. 446, 451–52, 569 A.2d 10 (1990).

Here, the court properly determined that the plaintiff had failed to lay a proper foundation to establish that

Montesi's prior accident was substantially similar to the plaintiff's accident. The plaintiff attempted to introduce the evidence of Montesi's prior accident without having first established the circumstances under which her accident occurred. The plaintiff's argument that the court failed to admit the report after finding that it was a business record misses the mark. The court did not admit the evidence because it lacked an adequate foundation to establish that it was relevant. Without the evidence of the circumstances of the plaintiff's accident, the court was not in a position to determine whether Montesi's accident was substantially similar to the plaintiff's. The plaintiff had the opportunity to introduce that foundation and to have Montesi's accident report admitted as a full exhibit, but the plaintiff failed to do so. Accordingly, we conclude that the court did not abuse its discretion when it refused to admit Montesi's accident report into evidence for lack of a proper foundation.

2

The plaintiff also claims that the court improperly excluded the testimony of Kaltenstein regarding his investigation and observation of the dumpster lid. Kaltenstein testified that the dumpster lid flipped back and rested on a metal brace. The court did not allow Kaltenstein to testify as to how the lid functioned or safety problems with the dumpster. The court further refused to allow Kaltenstein to give his opinion regarding the safety of the dumpster lid.

After our review of the record, we conclude that the court properly limited Kaltenstein's testimony to his observations because Kaltenstein was not qualified as an expert. Connecticut Code of Evidence § 7-1 provides: "If a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the

witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Kaltenstein testified that he did not observe the plaintiff's accident. Moreover, Kaltenstein was not testifying as to any fact in issue. Instead, Kaltenstein's proposed testimony concerned a previous incident with the dumpster. The similarity of that previous incident, however, had not been established at that point in the trial. Therefore, the court did not abuse its discretion when it excluded opinion testimony by Kaltenstein as to the unsafe condition of the dumpster.

### 3

The plaintiff also claims that the court improperly excluded the testimony of Grailich as to the function and safety of the dumpster. Specifically, the plaintiff attempted to introduce into evidence through Grailich five letters to Automated Waste in which it was claimed that the dumpster was unsafe. The letters were mailed pursuant to Grailich's duties as a safety officer. Grailich testified that he did not know whether the dumpster that injured another individual was the same as the one that injured the plaintiff.

The plaintiff argues that the court improperly excluded the letters on the ground of hearsay. The defendants respond that the court properly excluded the letters because they lacked an adequate foundation.

During a hearing outside the presence of the jury, the plaintiff's counsel asked Grailich what happened after the delivery of the dumpster. The court inquired of the plaintiff's counsel regarding what evidence counsel sought to introduce through Grailich. Counsel responded: "I'm going to . . . indicate that in the course of his duties as a safety officer, it came to his attention that there was a problem relating to the dumpster lids and that he, in consequence of that, in consultation with the postmaster, he prepared a letter

. . . in the regular course of business, and it was his duty to prepare, and that any information that is contained in the letter [from] any other sources of which he didn't have personal knowledge came from people who had a duty to report."

The plaintiff sought to introduce testimony by Grailich concerning a prior incident involving another custodian, Vaughn Davis. The plaintiff also sought to introduce evidence of the incident involving the dumpster and Montesi. Grailich testified that he had discussions with the postmaster, George D. Fisher III, about improving the dumpster lids. Grailich and the postmaster came up with the idea of suggesting to Automated Waste that a chain be used to hold up the dumpster lid.

The plaintiff sought to introduce the letter that contained the suggestion for a chain along with a description of the incidents that occurred involving Montesi and Davis. Grailich testified that he prepared the letter for Fisher. Grailich further testified that he prepared the letter during the regular course of business. When asked if the letter was prepared contemporaneously with the incident, Grailich testified that he wrote it in April, 1999, several days after the incident involving Montesi.

Grailich testified that he did not know the circumstances concerning Davis' or Montesi's incidents involving the dumpster. Grailich conceded that no incident reports were prepared concerning either Davis' or Montesi's incident.

The court declined to allow what had been marked for identification as exhibit six, consisting of the April 20, 1994 letter by Fisher to Automated Waste, as a full exhibit. The court further refused to admit into evidence what had been marked for identification as exhibits seven, eight, nine and ten, which consisted of follow-up

letters to Automated Waste and mentioned the previous incidents with the dumpster, as full exhibits.

In regard to exhibit six for identification, the court refused to admit the letter into evidence because the record contained no evidence as to the conditions as they existed at the time of the plaintiff's injury. The court found that the plaintiff had laid no foundation as to similarity between the incidents mentioned in the letter and the incident involving the plaintiff. The court also stated that the record did not contain evidence establishing that the dumpsters were the same in all of the incidents, and the court further stated that the relevance of the two incidents described in the letter, which took place in the spring, lacked a foundation establishing that they were relevant to the incident that took place in the fall. The plaintiff conceded that this evidence did not exist and that a foundation had not been properly laid.

The court properly determined that the letter, exhibit six for identification, lacked a foundation. Moreover, the other four letters, exhibits seven, eight, nine and ten for identification, also lacked an adequate foundation because they merely served as follow-up letters to the original letter. The court concluded that those letters did not qualify as business records pursuant to § 52-180 because they were not written contemporaneously with the incidents.[5] We conclude that the court properly sustained the defendants' objection to the introduction of those exhibits because they lacked a foundation.

### B

The next evidentiary claim by the plaintiff is that the court improperly excluded an accident report made in

[5] The defendants objected on the grounds of lack of a foundation and that the letters were not written contemporaneously with the incidents. The court sustained the objection. The plaintiff did not ask for an articulation of the court's ruling.

the regular course of business by Claude Bannister, supervisor of customer service. We disagree.

Here, the court agreed that the report qualified as a business record for purposes of the hearsay rule. Nevertheless, the court also concluded that the report contained inadmissible opinion evidence by Bannister regarding the cause of the plaintiff's accident. Specifically, within the report, Bannister stated: "It appears that the wind caused the lid to fall." Bannister did not observe the incident, and he was not qualified as an expert. "An opinion included within an otherwise admissible business record is admissible if the entrant would be qualified to give that opinion in oral testimony. *Mucci* v. *LeMonte*, [157 Conn. 566, 569–70, 254 A.2d 879 (1969)]; *D'Amato* v. *Johnston*, 140 Conn. 54, 58, 97 A.2d 893 (1953); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.14.8." *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 799, 595 A.2d 839 (1991). Because Bannister did not observe the accident, he was not qualified as a lay witness to give his opinion as to the cause of the accident. See id.; Conn. Code Evid. § 7-1. Therefore, we conclude that the court did not abuse its discretion when it refused to admit Bannister's report.

C

The plaintiff next claims that the court improperly admitted the testimony of the defendant's medical expert, James Donaldson, a physician. Counsel for Automated Waste questioned Donaldson as to whether there was any indication in the file that the plaintiff's work was restricted in any way before the incident with the dumpster lid. Donaldson responded that Grailich's deposition contained such an indication. Counsel for the plaintiff objected on the ground that the deposition was not admitted into evidence. The court sustained the objection. Thereafter, Automated Waste's counsel

questioned Donaldson as follows: "Without reading the deposition transcript, what indications are there that [the plaintiff] had limitations or pain and restrictions in her work at any time [after] she went back to work and before the subject incident?" The plaintiff's counsel objected on the same ground, arguing that the defense counsel was attempting to get the evidence in "through the back door." The court overruled the plaintiff's objection.

The plaintiff argues that the court should not have allowed Donaldson's testimony into evidence without a cautionary instruction that explained to the jury that it could not consider the content of Grailich's deposition for the truth of the statements contained therein, but only to show the basis of the expert's opinion. The plaintiff further argues that the court's failure to give such a limiting instruction allowed the jury to rely on hearsay, which was prejudicial to her case. The plaintiff's claim is without merit.

In addressing the admission of expert testimony, our Supreme Court recently has stated and adopted the view that "[a]lthough '[h]istorically, many courts drew a sharp line between statements made to physicians consulted for purposes of treatment and those made to physicians consulted solely with the anticipation that the physician would testify in court on the declarant's behalf . . . [t]hese restrictions were abandoned by the drafters of the Federal Rule.' 2 C. McCormick, Evidence (4th Ed. 1992) § 278, pp. 249–50. Rule 803 (4) of the Federal Rules of Evidence 'makes no distinction between treating and nontreating physicians, even though the latter are frequently consulted solely for the purpose of preparation for trial. A fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription. To be admissible, a statement made for purposes of medical diagnosis must be one that an expert in the field would be justified

in relying upon in rendering an opinion.' 5 J. Weinstein & M. Berger, Federal Evidence (2d Ed. 1998) § 803.09 [4], p. 803-44. 'The general reliance upon "subjective" facts by the medical profession and the ability of its members to evaluate the accuracy of statements made to them is considered sufficient protection against contrived symptoms. . . . Under prior practice, contrived evidence was avoided at too great a cost and in substantial departure from the realities of medical practice. Rule 803 (4) eliminates any differences in the admissibility of statements made to testifying, as contrasted with treating, physicians.' 2 C. McCormick, supra, § 278, pp. 250–51. . . .

"Our conclusion is consistent with rule 703 of the Federal Rules of Evidence . . . as well as our holding in *In re Barbara J.*, 215 Conn. 31, 42–43, 574 A.2d 203 (1990), in which we relied, in part, upon that rule. We stated: 'The fact that an expert opinion is drawn from sources not in themselves admissible does not render the opinion inadmissible, provided the sources are fairly reliable and the witness has sufficient experience to evaluate the information. *Vigliotti* v. *Campano*, [104 Conn. 464, 133 A. 579 (1926)]; *Schaefer, Jr. & Co.* v. *Ely*, 84 Conn. 501, 508, 80 A. 775 (1911). An expert may base his opinion on facts or data not in evidence, provided they are of a type reasonably relied on by experts in the particular field. *State* v. *Cuvelier*, 175 Conn. 100, 107–108, 394 A.2d 185 (1978); see Fed. R. Evid. 703. This is so because of the sanction given by the witness's experience and expertise. *Burn* v. *Metropolitan Lumber Co.*, 94 Conn. 1, 6, 107 A. 609 (1919). C. Tait & J. LaPlante, [supra, § 7.16.8 (c)].' . . . *In re Barbara J.*, supra, 42–43." *George* v. *Ericson*, 250 Conn. 312, 323–25, 736 A.2d 889 (1999).

Here, the court properly determined that Donaldson's testimony was admissible. As an expert, Donaldson could base his opinion in part on Grailich's deposition

despite the fact that it was not admitted into evidence. Conn. Code Evid. § 7-4 (b).[6] Therefore, we conclude that the court did not abuse its discretion by allowing Donaldson to testify about the plaintiff's condition where such testimony was based in part on knowledge acquired from Grailich's deposition, which was not in evidence.

## D

The plaintiff next claims that the court improperly refused to allow testimony regarding the malfunction of the dumpster prior to testimony as to the cause of the plaintiff's injuries. Specifically, the plaintiff argues that the court should have allowed her to present testimony in the manner chosen by her counsel and not according to whether a foundation had been laid for the presentation of the testimony. We disagree.

As we stated in part II A 1,[7] evidence of prior occurrences will be admitted only after the proffering party lays an adequate foundation establishing a substantial similarity of conditions between the occurrences. *Hall* v. *Burns*, supra, 213 Conn. 452. The question of whether the proffering party has laid an adequate foundation is within the discretion of the trial court, and the court's decision will not be disturbed unless it has abused its discretion. Id. We note that the evidentiary claims raised by the plaintiff in this section of her brief are the same as those raised in part II A 1. Here, the plaintiff argues that the court abused its discretion when it excluded

[6] Connecticut Code of Evidence § 7-4 (b) provides: "The facts in the particular case upon which an expert bases an opinion may be those perceived by or made known to the expert at or before the proceeding. The facts need not be admissible in evidence if of a type customarily relied on by experts in the particular field in forming opinions on the subject. The facts relied on pursuant to this subsection are not substantive evidence, unless otherwise admissible as such evidence."

[7] The plaintiff claims that the court improperly refused to admit Montesi's testimony concerning a previous incident with the dumpster. See part II A 1.

evidence of the previous malfunction of the dumpster lid. For the same reasons stated in part II A 1, the court did not abuse its discretion in concluding that the plaintiff had not laid an adequate foundation.

### III

The plaintiff claims finally that the court improperly refused to allow her to make an offer of proof. Specifically, the plaintiff claims that she attempted to make an offer of proof regarding Kaltenstein's proffered testimony. When the plaintiff's counsel attempted to elicit the offer of proof through Kaltenstein's testimony, outside the presence of the jury, the court stopped the plaintiff's counsel and would not allow the offer of proof to be made through Kaltenstein. The plaintiff claims that the court's refusal to allow the offer of proof deprived her of her right to preserve the record. We disagree.

Here, the court denied the offer of proof on the basis of a lack of a foundation for the testimony. Because we already have concluded that the court did not abuse its discretion when it held that Kaltenstein could not testify as to his opinion regarding the operation of the dumpster lid, it follows that the court did not improperly preclude the plaintiff from making an offer of proof. The questions had been asked and objected to by the defendants. The court sustained the defendants' objection. We have reviewed the record and conclude that under the facts and circumstances of this case, the court properly precluded the plaintiff from making the offer of proof.

The judgment is affirmed.

In this opinion the other judges occurred.