STATE OF CONNECTICUT *v.* ERIC M.*
(AC 22747)

Foti, Dranginis and Bishop, Js.

---

* In accordance with the spirit and intent of General Statutes § 54-86e and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

92

Argued June 3—officially released August 26, 2003

*John R. Williams*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Eric M., appeals from the judgment of conviction, rendered after a jury trial, of two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (C), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), assault in the second degree in violation of General Statutes § 53a-60 (a) (1) and sexual assault in a spousal relationship in violation of General Statutes § 53a-70b (b). The defendant claims that the trial court improperly (1) denied him the right to a public trial, (2) denied him the right to be presumed innocent until proven guilty, (3) infected the case with judicial bias, (4) prohibited him from using as evidence excerpts of certain videotapes, (5) denied his motion for a mistrial, (6) delivered an unbalanced jury charge and (7) based his sentence on improper considerations. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At all times relevant to this proceeding, the victim, S,[1] and the defendant were married. They separated in February, 2000, and divorce proceedings commenced. While the divorce was pending, the defendant and the

---

[1] Pursuant to General Statutes § 54-86e, we will refer to the victim only as "S."

victim had agreed that the victim would reside in the marital home and the defendant would stay at his parents' house.

On May 9, 2001, the defendant told the victim that he would come to the marital home the following day to mow the lawn. When the victim arrived home on May 10, 2001, she did not see the defendant's car in the driveway. She entered the house and noticed that the entertainment center in the living room had been moved slightly and that the power was out in the room. When she went to the basement to check the fuse box, the defendant pounced on her and placed her in a choke hold. He then pinned her down and forced her to put on handcuffs, threatening to choke her if she did not comply. The defendant removed the victim's shirt and dressed her in jean shorts. He then tied her to a folding chair, using duct tape, rope and wire, and gagged her mouth with bandanas and rope.

The defendant left the victim tied to the chair despite her cries and pleas until, at some point, he allowed her to use a bathroom. While the victim remained handcuffed and gagged, the defendant led her upstairs to the bathroom where he watched her use the toilet and then performed cunnilingus on her.

The defendant attempted to tie the victim to the toilet, but she was able to run into the living room where the defendant tackled her on the couch. When she ran to the porch and attempted to open a storm door, the defendant caught her, and choked her until she lost consciousness and fell through the glass storm door.

Next, the defendant brought the victim to the bedroom and tied her to the bed. When he left the room to clean up the broken glass from the shattered storm door, the victim was able to maneuver enough to dial 911 and to seek help from the telephone operator. Sub-

sequently, the defendant returned and pulled the telephone from the wall.

Benjamin Doerfler, a police officer with the Southington police department, arrived at the victim's residence at 6:55 p.m. in response to the 911 call. He entered the residence through the porch door, and noticed broken glass and blood. He announced his presence and heard a female scream. He followed the scream to the bedroom, kicked open the door and saw the defendant on top of the victim on the bed. The victim's hands and feet were bound, and she was crying and screaming. In conjunction with the arrest of the defendant, the police seized an eight millimeter videotape from a videocamera in the basement depicting the events that took place in the basement on the day in question.

At trial, the defendant's defense was consent. He introduced various videotapes from earlier in the marriage depicting consensual, bondage type sexual activity between himself and the victim. Following a jury trial, the defendant was convicted and later sentenced to an effective term of seventy-five years incarceration, suspended after twenty-two years, and thirty-five years of probation with conditions. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied him his sixth amendment right to a public trial by sealing videotape exhibits in the case during and after the trial.

The court conducted a hearing on the defendant's request to admit into evidence videotapes depicting consensual sexual activity between him and the victim during their marriage. The court ruled that the tapes were admissible as evidence in open court, but ordered that they not be disclosed to the general public, for

inspection or copying, because of their explicit sexual nature. Thereafter, the defendant introduced into evidence twelve videotapes depicting scenarios of himself and the victim in consensual sexual bondage, and he played several of those tapes in open court during the victim's cross-examination.

The court based its order on its concern for the victim's privacy and dignity, as reflected in article first, § 8 (b), of the state constitution, as amended by articles seventeen and twenty-nine of the amendments, together with the intent and purpose of the rape shield statute, General Statutes § 54-86f. In addition, the court stated a concern that it could be a participant in disseminating pornography if it allowed the tapes to be copied and made available to the general public.

The defendant claims that exhibits admitted into evidence are presumed open to the public and that a court may not seal them without overwhelming and clearly articulated reasons for doing so. Although we agree with the proposition advanced by the defendant that trial evidence, including exhibits, should generally be available to the public, we believe the court's decision to limit dissemination of the subject videos while admitting them as evidence in a public trial struck an appropriate balance between the public's right to access and the privacy interests of the victim.

"A defendant's right to a public trial is guaranteed in all criminal proceedings by the sixth amendment to the United States constitution. . . . This right is made applicable to the states through the fourteenth amendment . . . and also is encompassed in article first, § 8, of the Connecticut constitution. . . . Public trials vindicate an important public interest in the judicial system and help ensure testimonial trustworthiness. . . . Openness of a criminal trial enhances both its basic fairness and the appearance of fairness, which is essen-

tial to public confidence in the system. . . . The right to a public trial, however, is not absolute. . . . An accommodation must sometimes be made between the individual's right to a public trial and other societal interests that might justify closing the courtroom to the public. . . . In light of these concerns, a court's power to order a closure of the courtroom should be sparingly exercised, and limited to those situations where closure is demonstrably necessary to further the administration of justice." (Citations omitted; internal quotation marks omitted.) *Ostolaza* v. *Warden*, 26 Conn. App. 758, 769–70, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992).

The United States Supreme Court, in response to a claim that certain recordings played at trial be made available to the media for copying, held: "Nor does the Sixth Amendment require that the trial—or any part of it—be broadcast live or on tape to the public. The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 610, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978).

In the present case, there was no closure of the courtroom. The videotapes proffered by the defendant were played in open court, and members of the media and the public were not excluded from the courtroom. Thus, all had an opportunity to attend the trial and to report what they observed. The court's order that the videotapes not be copied or be made available for inspection by the public was not, therefore, unlawful. In those circumstances, it also was not an abuse of discretion. As demonstrated by General Statutes § 54-86e (providing confidentiality of name and address), victims of sexual assault are entitled to some privacy protections in the criminal justice process. We believe the court's order was in accord with that policy.

## II

The defendant next claims that the court improperly denied him his constitutional right to be presumed innocent until proven guilty beyond a reasonable doubt. Specifically, he cites several instances in which, he claims, the court undermined the presumption of innocence by referring to the victim by a variety of pseudonyms such as "Ms. M" and "Ms. S," by striking references to the victim's full name, by referring to the victim as "the victim" and by characterizing the decision facing the jury as "not very complex."

At the preliminary hearing on the admissibility of the videotapes, the victim stated that she did not care whether her full name was used on the record. The court, however, indicated that it would follow § 54-86e and not disclose her name on the record. During jury selection, the court informed the jurors that if it inadvertently used the word victim, it was referring to the complaining witness and that it was the jury's prerogative to determine a person's status as a victim. Prior to the introduction of evidence, the court instructed the jury on the presumption of innocence.

At trial, after Doerfler, the arresting officer, referred to the victim by her full name several times, the court ordered those references stricken from the record and informed the jury that it was following a statute that required that the identity of a victim of sexual assault remain confidential. It then reiterated its prior instruction to the jury that if it inadvertently referred to S as a victim, it did not necessarily mean she was, in fact, a victim.

In its final charge to the jury, the court explained that the defendant had the right to be presumed innocent. The court also characterized the determination the jury had to make as "not a very complex decision that you have to reach. Did [S] consent to what occurred

. . . . Who or what you are going to believe and whether you believe it must be beyond a reasonable doubt. . . . Is the state's tape indicative of what the defense claims or what the state charges . . . ."

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. . . . The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. . . . In order to implement that presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Prutting*, 40 Conn. App. 151, 165–66, 669 A.2d 1228, cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996).

As to the defendant's initial claim in that regard, the court's use of pseudonyms to refer to the victim was proper and a well established method for courts to comport with § 54-86e, which provides for the confidentiality of the name and address of a victim of sexual assault. The court's subsequent action in striking references to the victim's full name from the record was little more than an effort to maintain compliance with the statutory requirements and was not improper.

Although we do not condone the court's use of the word "victim" to refer to S during trial, any impermissible effect of the use of that term was ameliorated by the court's twice stated instruction to the jurors that it was up to them to decide if the complaining witness was a "victim" and that any use by the court of that word was inadvertent. Moreover, the court provided both preliminary and final instructions accurately describing the defendant's presumption of innocence,

further negating any potential harm caused by the court's use of the word "victim."

Finally, the court's marshaling of the evidence in its charge that the decision facing the jury was not very complex did not deprive the defendant of a fair trial. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 128, 836 A.2d 224 (2003).

Although the statement that the decision facing the jury was not a complex one, if assessed out of context, may appear to be of questionable propriety, we review the statement in the broader context of the entire charge. From that perspective, and on the basis of our review of the entire charge, we conclude that the court's instructions to the jury were balanced and fair. Additionally, the court's assessment flowed from the evidence. It is clear from the record that a major aspect of the trial was the defense of consent, and, on that issue, the relative credibility of the witnesses was, no doubt, a significant factor. In that context, we conclude that the court's comment regarding the difficulty of the jury's task was not impermissible.

### III

The defendant next claims that the case was fatally infected by judicial bias. Specifically, he claims that the

court became, at an early point in the case, an active and interested participant on behalf of the state. We disagree.

The defendant refers to numerous parts of the proceedings to support his claim. Initially, the defendant claims that on several occasions, the court interposed its own objections to the defendant's cross-examination of the victim. Initially, when defense counsel asked the victim whether she understood a comment by the defendant to mean that he was intoxicated, the court indicated that there had been no testimony to that effect. Next, when the defendant offered a hospital record as a full exhibit, the court requested the basis of admissibility. When the defendant responded that the record was admissible as a prior inconsistent statement, the court noted that the witness had not denied making the statement, but could not recall whether she had made the statement. Next, the court interjected that a question as to whether the victim recalled that she had denied being sexually assaulted already had been posed and answered. Finally, the court interposed its own objection when defense counsel attempted to elicit testimony from the victim regarding communications with her attorney, at a time when the jury had been excused.[2]

Additionally, the defendant claims that the court acted in a biased manner by requiring that he be identified to the jury as the source of the consensual sex videotapes to establish a foundation for their admissibility. At that point, defense counsel noted that the state had not objected and that the court's role in the courtroom was as a judge, not as an adversary. Counsel then requested that the judge recuse himself, which was denied.[3]

---

[2] It should be noted that at that time, defense counsel told the court to put its robe back on, and accused the court of becoming a participant and adversary.

[3] That colloquy took place in the absence of the jury.

The final incident of alleged judicial bias claimed by the defendant occurred when the victim testified that she did not recall the exact words she used when she spoke with her therapist regarding the sexual assault. When the defendant attempted to show the therapist's notes to her, the state objected and the jury was excused. The state then argued that the notes were being used to try to impeach the victim. When the defendant disclaimed that strategy, the court commented that defense counsel had "perverted" the rules. The defendant then made another motion for the court to recuse itself, which also was denied.

"A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . He may, of course, take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct. . . . A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. . . . It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 181, 782 A.2d 231 (2001).

"Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . The standard that we employ on appellate review is whether a reasonable person who is aware of the circumstances surrounding the judicial proceeding would question the judge's impartiality." (Citations omitted; internal quotation

marks omitted.) *State* v. *William B.*, 76 Conn. App. 730, 749, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003). "It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial." (Internal quotation marks omitted.) *In re Salvatore P.*, 74 Conn. App. 23, 31–32, 812 A.2d 70 (2002), cert. denied, 262 Conn. 934, 815 A.2d 135 (2003).

Upon review of the record, we do not find that judicial bias fatally infected the case. Rather, our review of the court's rulings at trial, taken as a whole, reveals them to have been balanced and fair. The court ruled in the defendant's favor on several occasions, and, in fact, dismissed two of the initial charges brought against the defendant as lacking evidentiary support. The instances of colloquy between the court and defense counsel that appeared to be adversarial took place out of the presence of the jury. We note also that defense counsel, out of the presence of the jury, at one point suggested to the trial judge that he should "put [his] robe back on" and that defense counsel was having a hard enough time with only one prosecutor. Those comments were both disrespectful and inappropriate. Although the court may have joined the forensic fray on a few occasions to an extent greater than we would recommend, a review of the entire trial transcript reveals that the court exercised restraint in the face of unwarranted personal attacks.

IV

The defendant next claims that the court improperly prohibited him from using excerpts from evidence during cross-examination of the victim while, at the same time, allowing the state to do so. We disagree.

The defendant attempted to introduce nine still photographs that had been isolated and copied from the

various videotapes that already had been admitted into evidence. The court ruled that the stills were inadmissible because the format of the videotape was different from that of the stills and, as such, the context was changed. Additionally, the court ruled that there was no showing that the stills would assist the jury, the stills were more prejudicial than they were probative and that the defendant had the opportunity to use the videotapes themselves in his cross-examination of the victim. The defendant took exception because the court had allowed the state to introduce a "highlights" video, which incorporated excerpts from the videotapes, although in their video format.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Ciccio*, 77 Conn. App. 368, 382, 823 A.2d 1233 (2003).

Our review of the record reveals no abuse of discretion in the court's action. The videotapes that previously had been introduced into evidence were the most accurate, truthful and representative evidence of the defendant and victim's sexual history together. Still

photographs of the same easily could be taken out of context and used to distort the evidence. In addition, the audio portion of the videotapes was integral to their accuracy and truthfulness. Contrary to the defendant's claim, the "highlights" videotape introduced by the state was not analogous to the still photographs sought to be introduced by the defendant, as the highlights were in the same video format and retained the audio components. The court's evidentiary ruling was not an abuse of discretion.

V

The defendant next claims that the court improperly denied his motion for a mistrial or a curative instruction after a prosecution witness repeatedly volunteered prejudicial and inadmissible testimony. We disagree.

Michael Shanley, a detective with the Southington police department, was called to testify concerning various items of evidence he took into his custody. During cross-examination by defense counsel, the following colloquy occurred:

"Q. My question was: Didn't [the defendant] sign a consent to search? The answer is yes or no.

"A. He signed a consent for us to look for a weapon—

"Q. Is that what it was for?

"A.—that he indicated that he had purchased to kill both [S] and himself after he killed her."

The defendant subsequently requested that the court strike the witness' response and grant a mistrial. The court told the jurors to disregard the latter portion of Shanley's testimony and excused them. After the court heard argument and ruled that the statement was more prejudicial than it was probative, and after the jury returned to the courtroom, the court gave this instruction: "Ladies and gentlemen, disregard the whole ques-

tion, the response. Totally ignore it. There's no basis in it."

On redirect examination, the state asked Shanley to explain the basis of his knowledge of why the consent search was conducted at the defendant's apartment. Shanley answered: "That potential harm could have come to [S] or to the [defendant]. And based upon that information, we went to his apartment or other detectives went to his apartment for the specific purpose of locating and seizing a specific type of item." The defendant again made a motion to strike and for a mistrial. The court denied both and noted that the defendant had entered into evidence his written consent to search his premises and that the state was entitled to explore that subject.

As previously stated, we review the court's evidentiary rulings to determine whether it abused its discretion. "Appellate review of a trial court's decision granting or denying a motion for a [mistrial] must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a [mistrial] is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 257, 780 A.2d 53 (2001).

The first challenged statement made by Shanley was promptly stricken from the record, and the jury was immediately instructed twice to disregard that state-

ment. The jury also was reminded in the court's final charge that stricken testimony is not evidence. "Unless there is evidence to the contrary, the jury is presumed to follow the court's instructions." (Internal quotation marks omitted.) *State* v. *Aponte*, 66 Conn. App. 429, 454, 784 A.2d 991 (2001), cert. denied, 259 Conn. 907, 789 A.2d 995 (2002). It was not an abuse of discretion for the court to deny the defendant's initial motion for a mistrial.

The second challenged statement by Shanley was in response to a query as to why a search of the defendant's apartment was conducted. The substance of his response was vague and not prejudicial. He did not repeat his earlier stricken testimony, but only explained that the motivation for the search was an effort to avert potential harm to the victim or the defendant. In addition, as the court found, the defendant had "opened the door" to that question by putting into evidence his written consent to search his apartment together with his query of Shanley: "Is that what [the consent to search] was for?" "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject." (Internal quotation marks omitted.) *State* v. *Paulino*, 223 Conn. 461, 467, 613 A.2d 720 (1992). We conclude the court did not abuse its discretion by denying the defendant's renewed motion for mistrial.

VI

The defendant next claims that the court gave an improper jury instruction concerning consciousness of guilt. Specifically, he claims that the consciousness of guilt instruction was unbalanced because it did not include language that there may have been a possible innocent explanation for his behavior. We disagree.

The defendant submitted a request to charge that contained language addressing terrified innocence, i.e., that a person's conduct or words may be explained by terrorized innocence and not a sense of guilt. The court did not include that language, but instead gave the following charge, in relevant part, over the defendant's objection:

"There was a principle that came up in this case that we call, under the law, consciousness of guilt. There has been testimony that the defendant refused to respond to a question by Officer Fournier, specifically inquiring as to why the defendant moved his car to a particular area away from the house . . . . There has been testimony that the defendant responded to the questions—the questions both before and after his refusal to answer that question. Under our law, it is appropriate for you to consider such selective silence as evidence of consciousness of guilt."

"[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003). "[T]he decision whether to give an instruction on [consciousness of guilt], as well as the content of such an instruction, if given, should be left to the sound discretion

of the trial court." (Internal quotation marks omitted.) *State* v. *Jackson*, 75 Conn. App. 578, 590, 816 A.2d 742 (2003).

The defendant has cited no case law, nor have we discovered any, that requires the court to adopt the language advanced by the defendant in lieu of that utilized by the court. To the contrary, our Supreme Court has approved an instruction that certain conduct may be considered as evidence of guilt. See *State* v. *Groomes*, 232 Conn. 455, 474, 656 A.2d 646 (1995). The court properly phrased its instruction as a permissive inference and did not suggest that the jury was required to infer consciousness of guilt. Read as a whole, the court's instructions to the jury were balanced and fair. The court's instruction on consciousness of guilt was not an abuse of discretion.

## VII

The defendant's final claim is that the court based its sentence in part on improper considerations. Specifically, he claims that the court improperly used a newspaper article to increase the severity of his sentence. We are unpersuaded.

The following additional facts are relevant to our discussion of the defendant's claim. On January 10, 2002, an article was published in the Hartford Advocate concerning the trial of this matter as well as the topics of bondage, domination and sadomasochism generally. The author of the article indicated that he had spoken with the defendant by telephone, and that the defendant and the victim had practiced consensual bondage before and during their marriage. The article actually discussed one such encounter. The author also stated that the defendant saw himself as the real victim on the basis of his claim that he had been framed by his legally savvy wife in possible retaliation for his pursuit of a divorce.

The court, during the sentencing hearing, informed defense counsel that it had read the article and that the article had, in its view, aggravated the crime by revictimizing the victim. The court stated: "Let's just say my range changed a little bit after reading the article." Additionally, before passing sentence, the court commented: "Well, now she's the heroine and you're the chump that's going to jail," and, "Laugh at him, he's a loser." In response to those comments, defense counsel asked the court recuse itself. The court denied the motion and stated that it would consider a whole range of factors in determining sentence and that the article was relevant to legitimate sentencing considerations: Lack of remorse and exacerbating the crime by subjecting the victim to public ridicule.

Although the defendant acknowledges that judicial bias at sentencing would not entitle him to a new trial, he claims that the court's comments evinced sufficient bias to warrant re-sentencing before a different judge. Thus, the question on appeal is whether it was an abuse of discretion for the court to decline to recuse itself in the face of defense counsel's request following the court's comments.

If "a sentence is within statutory limits it is not generally subject to modification by a reviewing court. . . . A sentencing judge has very broad discretion in imposing any sentence within statutory limits . . . . The court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . Due process requires, however, that information be considered only if it has some minimal indicium of reliability. . . . Among the factors that may be considered by a court at a sentencing hearing are the defendant's demeanor and his lack of veracity and remorse as observed by the court during the course of the trial on the merits." (Citations omitted; internal

quotation marks omitted.) *State* v. *Anderson*, 212 Conn. 31, 47, 561 A.2d 897 (1989).

The gravamen of the defendant's claim is that the court made reference to information that was not part of the record and that in commenting on that information, demonstrated bias against him.

As a general proposition, the court at sentencing is permitted to consider information not circumscribed by the rules of evidence. Specifically, the court is permitted to consider hearsay. See *State* v. *Russell*, 58 Conn. App. 275, 280, 752 A.2d 59 (2000). Thus, although the newspaper article clearly was hearsay, it was not inappropriate for the court to refer to it. Additionally, the article had some minimal indicia of reliability, as the defendant denied neither the accuracy of the article's contents nor his involvement with its creation.

As to the propriety of the court's comments, although we do not condone the court's choice of language, neither do we condemn it, as we are mindful that the trial court, and not us, heard the evidence and had its own opportunity to gauge the severity of the offenses and the quality of the defendant's remorse, if any, postconviction. Thus, although we expect the court to maintain a continuing demeanor of impartiality during trial, at sentencing, the court speaks as an agent of the community and as the voice of justice. That the court was human in expressing its indignation at the defendant will not be the cause of condemnation by this court. The defendant's sentence was within the statutory limits; it was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.