**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael David ROBELO,**
**Defendant-Appellant.**

**No. 78–3126.**

United States Court of Appeals,
Ninth Circuit.

May 10, 1979.

Martin D. Lurie (argued), San Francisco, Cal., for defendant-appellant.

Joyce A. Babst, Asst. U.S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CARTER and WRIGHT, Circuit Judges, and SOLOMON,* District Judge.

JAMES M. CARTER, Circuit Judge:

Michael Robelo was apprehended in May 1978 as he entered the United States after a

---

* Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

flight from Lima, Peru, with 972 grams of cocaine hidden under a false bottom in his suitcase. After being apprehended, Robelo persistently asserted that he acted alone in saving $9,000 to finance his trip and the cocaine purchase, and that he acted alone in making the purchase. He also maintained persistently that he had never been involved in any previous criminal activity. He stated he had paid $7,600 for the cocaine. It had a street value of $280,000. He originally claimed he did not know the purity of the cocaine, but later admitted having performed a "clorox test" to determine its purity.

Robelo pleaded guilty to illegally importing the cocaine into the United States.

The pre-sentence report showed that when Robelo arrived at the Los Angeles airport he was extremely nervous and answered the Customs inspector's questions with evasive responses. He was not particularly cooperative with the agent.

The report supplied Robelo's background, showing that for five summers he worked as a counselor at a summer camp in New York. He finished high school in 1974 and went to Israel for one year on a work-study program. Between 1975–1977 he claimed he worked as a carpenter and salesman in New York for $150 per week. The Probation Officer added: "This has not been confirmed but his mother has reported that he was without steady employment during the time he was with her in New York." Robelo told the Probation Officer that he had been unemployed since December 1977, when he last worked as a carpenter. He had been living off his savings and had been paying $125 towards rent. He indicated there were no other sources of income other than occasional gifts from his family.

The Probation Officer's report indicates he was skeptical of Robelo's version of the offense, namely, that he acted alone.

"For a young man to have saved in excess of $9,000, when his mother reports he was not steadily employed while in New York, is difficult to believe. It was also noted that Robelo originally reported he had no idea of what the purity of the cocaine was that he was purchasing, but he had actually performed a test to determine the approximate purity. It appears to the Probation Officer that the defendant is trying to protect some other party or parties who financed Robelo's purchase of the cocaine. . . . If one believes the defendant, he was not a mule in this case but the principal figure since he claimed he was acting alone. If one doubts his version then he becomes more of the transporter of the cocaine with reduced rewards available to him. In either case the deterrent effect of incarceration is vital to discourage others from involving themselves in the same kind of offense. Because it is generally accepted that a young offender with no prior criminal record will receive a minimal type sentence, people like Robelo take the chances that they do."

The pre-sentence report further stated that Robelo had never been convicted previously of any crime, and recommended a short period of custody followed by probation.

The district court sentenced Robelo to four years imprisonment, followed by a three-year special parole term. The maximum penalty for illegal importation of cocaine is 15 years imprisonment and a $25,000 fine, plus a special three-year parole term.

In sentencing Robelo, the district court stated that this crime was fairly sophisticated, that it involved a certain level of expertise, and that it was difficult to believe that Robelo could have saved $9,000 during an 18-month period when he was largely unemployed. The district court concluded that Robelo was probably part of a group of persons who financed the transaction and inferred that although Robelo had not been caught before, "it doesn't mean that this is a single transaction." He noted the place and facts of the offense and commented on Robelo's "nerve" and "expertise."

After summarizing the facts and his impressions from them the judge asked counsel: "Doesn't it just about sum itself up

pretty much when I say that?" Counsel's response was: "Well, the manner in which it happened it showed it was such an unsophisticated gamble." When the defendant was asked if he had anything to add he said: "No." He did not attempt to correct the court's statement or analysis.

The appellant's counsel has attempted to mislead us. In his brief at pages 7 and 8, he represents that "The pre-sentence report was favorable to the appellant." And, "The report has recommended a lenient sentence." Counsel went on to say: "Indeed the presentence report contains nothing to indicate or even to suggest that the appellant had ever before been engaged in criminal activity."

Robelo argues that his sentence must be vacated and he must be resentenced because the district court violated due process of law by basing his sentence on these inferences and by requiring him to rebut the inferences.

■ We disagree. Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standards as evidence introduced at trial. Rather, judges may consider a wide variety of information in order to tailor the punishment to the criminal rather than to the crime. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). *Accord, United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 2610 (1978).

■ Robelo relies extensively on *United States v. Weston*, 448 F.2d 626 (9 Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). He contends that the inferences that the district court drew were so tenuous that he was denied due process. Robelo's argument is not persuasive.

In *Weston*, the only facts supporting the trial court's conclusion that Weston was the chief heroin dealer in Western Washington were an opinion of an unidentified person in the Bureau of Narcotics and Dangerous Drugs and the unsworn statement of one agent that an informer had provided information partially supporting the conclusion. Here, the facts on which the trial judge inferred that Robelo probably belonged to a conspiracy and probably had committed similar crimes previously were directly before the court. This difference distinguishes *Weston* from this case. *See United States v. Morgan*, 595 F.2d 1134, No. 78–2296 (9 Cir., March 14, 1979), West's slip sheet, p. 784.

■ We instruct juries that an inference is a conclusion which reason and common sense lead a reasonable person to conclude is true from facts which have been proven. The sentencing judge is certainly entitled likewise to draw reasonable inferences.

■ Here, Robelo was either a principal in the smuggling venture or a transporter. If he was a principal, then others must have supplied money; if a transporter, then others arranged for the transportation. His ability to locate a seller in Peru, arrange for a purchase of cocaine which would have a street value of $280,000 in the United States, his "nerve" in handling such a transaction, and his expertise in securing a field test all support the sentencing judge's inferences.

The district court's conclusions here were not unreasonable. The facts surrounding Robelo's crime sufficiently support the conclusion that Robelo probably belonged to a group of persons involved in drug smuggling and that he probably had committed similar crimes previously.[1]

AFFIRMED.

---

1. *See United States v. Wondrack*, 578 F.2d 808, 810 (9 Cir. 1978) (refusing to vacate a sentence when the allegedly unreliable allegations were not entirely without support). *Cf. Farrow v. United States*, 580 F.2d 1339, 1360 (9 Cir. 1978) (en banc) (holding due process requires a sentencing court not to give unwarranted weight to allegedly unreliable hearsay information to enhance sentence).