STATE OF CONNECTICUT *v.* ERIC M.*
(SC 17074)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

* In accordance with the spirit and intent of General Statutes § 54-86e, as amended by Public Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

Argued September 21—officially released October 26, 2004

*John R. Williams*, for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Paul N. Rotiroti,* assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The sole issue in this certified appeal[1] is whether the Appellate Court properly concluded that the trial court had not abused its discretion in failing to recuse itself from the sentencing of the defendant, Eric M., following his judgment of conviction, rendered after a jury trial, of two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (C),[2] and one count each of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a),[3] assault in the second degree in violation of General Statutes § 53a-60 (a) (1)[4] and sexual assault in a spousal relationship in violation of General Statutes § 53a-70b (b).[5] See *State* v. *Eric M.,* 79 Conn.

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court did not abuse its discretion in declining to recuse itself from the sentencing of the defendant?" *State* v. *Eric M.,* 266 Conn. 917, 833 A.2d 468 (2003).

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or . . . (C) terrorize him or a third person . . . ."

[3] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

[4] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . ."

[5] General Statutes § 53a-70b (b) provides: "No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury."

App. 91, 829 A.2d 439 (2003). The defendant claims that the Appellate Court improperly concluded that the trial court's reliance on evidence outside the record and comments prompted by its consideration of that evidence in the sentencing proceeding did not violate his due process rights guaranteed by the fourteenth amendment to the federal constitution and article first, § 8, of the state constitution. We conclude that the trial court did not abuse its discretion in declining to recuse itself. Accordingly, we affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts that the jury reasonably could have found. "At all times relevant to this proceeding, the victim, S, and the defendant were married. They separated in February, 2000, and divorce proceedings commenced. While the divorce was pending, the defendant and the victim had agreed that the victim would reside in the marital home [in Southington] and the defendant would stay at his parents' house.

"On May 9, 2001, the defendant told the victim that he would come to the marital home the following day to mow the lawn. When the victim arrived home on May 10, 2001, she did not see the defendant's car in the driveway. She entered the house and noticed that the entertainment center in the living room had been moved slightly and that the power was out in the room. When she went to the basement to check the fuse box, the defendant pounced on her and placed her in a choke hold. He then pinned her down and forced her to put on handcuffs, threatening to choke her if she did not comply. The defendant removed the victim's shirt and dressed her in jean shorts. He then tied her to a folding chair, using duct tape, rope and wire, and gagged her mouth with bandanas and rope.

"The defendant left the victim tied to the chair despite her cries and pleas until, at some point, he allowed her

to use a bathroom. While the victim remained handcuffed and gagged, the defendant led her upstairs to the bathroom where he watched her use the toilet and then performed cunnilingus on her.

"The defendant attempted to tie the victim to the toilet, but she was able to run into the living room where the defendant tackled her on the couch. When she ran to the porch and attempted to open a storm door, the defendant caught her, and choked her until she lost consciousness and fell through the glass storm door.

"Next, the defendant brought the victim to the bedroom and tied her to the bed. When he left the room to clean up the broken glass from the shattered storm door, the victim was able to maneuver enough to dial 911 and to seek help from the telephone operator. Subsequently, the defendant returned and pulled the telephone from the wall.

"Benjamin Doerfler, a police officer with the Southington police department, arrived at the victim's residence at 6:55 p.m. in response to the 911 call. He entered the residence through the porch door, and noticed broken glass and blood. He announced his presence and heard a female scream. He followed the scream to the bedroom, kicked open the door and saw the defendant on top of the victim on the bed. The victim's hands and feet were bound, and she was crying and screaming. In conjunction with the arrest of the defendant, the police seized an eight millimeter videotape from a videocamera in the basement depicting the events that took place in the basement on the day in question." Id., 93–95.

Following the defendant's conviction, during the sentencing hearing, defense counsel argued essentially that the defendant should be given the four year sentence that had been proposed by the state prior to trial. He contended that, since the time that offer had been made,

the court had heard the victim's testimony, watched the videotapes[6] and read the presentence investigation report along with associated materials, and that the four year sentence was still appropriate. The trial court responded that it also had read a January 10, 2002 article published in the Hartford Advocate discussing the defendant's trial as well as the topics of bondage, domination and sadomasochism generally. In the article to which the court referred, "[t]he author . . . indicated that he had spoken with the defendant by telephone, and that the defendant and the victim had practiced consensual bondage before and during their marriage. The article actually discussed one such encounter. The author also stated that the defendant saw himself as the real victim on the basis of his claim that he had been framed by his legally savvy wife in possible retaliation for his pursuit of a divorce." Id., 109. The trial court informed the defendant that, in its view, the article had revictimized the victim. According to the trial court, the defendant's conduct demonstrated a lack of remorse and exacerbated the impact of the crime by exposing the victim to more public ridicule. The court declared to the defendant, "[l]et's just say my range changed a little bit after reading that article."

Defense counsel then moved for the court to recuse itself, claiming that the court's reliance on the article was improper and in violation of the defendant's first amendment rights. He added that any sentence greater than the four years that had been offered initially by the state would mean that the defendant was "being punished first and foremost for the crime of not bending the knee . . . ." The court denied the motion and stated that it would consider a wide range of factors in

---

[6] At trial, the defendant's defense was consent. He introduced videotapes from an earlier time during the parties' marriage depicting himself and the victim engaging in what appeared to be consensual, bondage type sexual activity. *State* v. *Eric M.*, supra, 79 Conn. App. 95.

determining the defendant's sentence and that the article was relevant to legitimate sentencing considerations. Defense counsel again objected to the trial court taking into account "things with which [the defendant] is not charged and which are not appropriate sentencing considerations," and concluded by saying, "I know Your Honor's going to do what you're going to do." Thereafter, the defendant expressly waived his right to allocution.

The court then heard from the state, followed by the victim advocate, the victim's mother and the victim, who read a prepared statement. Before imposing sentence, the court expressed to the defendant that, despite his attempts to undermine the victim's credibility, she had become the heroine, and instead of the defendant being the victim of her lies, he was "a loser that hooked on to her," like an abusive husband who gets his self-worth from belittling his wife. The court also remarked: "Well, now she's the heroine and you're the chump that's going to jail." Turning its attention to the victim, the court told her to go on with her life and to "[l]augh at him [because] . . . [h]e's a loser." The defendant voiced no objection to those remarks, either in connection with his earlier motion, or as a basis for any other claim, and the court imposed an effective sentence of seventy-five years imprisonment, suspended after twenty-two years, and thirty-five years of probation with conditions.

On appeal to the Appellate Court, the defendant claimed, inter alia,[7] that the court had based its sentence

---

[7] The defendant claimed that the trial court improperly had: (1) denied him the right to a public trial; (2) denied him the right to be presumed innocent until proven guilty; (3) infected the case with judicial bias; (4) prohibited him from using as evidence excerpts of certain videotapes; (5) denied his motion for a mistrial; (6) delivered an unbalanced jury charge; and (7) based his sentence on improper considerations. *State* v. *Eric M.*, supra, 79 Conn. App. 93. Only the last claim is involved in this appeal.

in part on improper considerations, specifically the Hartford Advocate article, and that its comments pertaining to the article demonstrated bias, which necessitated the court's recusal. *State* v. *Eric M.*, supra, 79 Conn. App. 109. The Appellate Court first determined that it was not improper for the trial court to refer to the article. Id., 111. The court noted that at sentencing proceedings trial courts are not circumscribed by the rules of evidence but, rather, may rely on information that is hearsay in nature so long as the material has some indicia of reliability. Id. It further concluded that, because the defendant neither denied having made the statements in the article nor the accuracy of those statements, the court's reliance was proper. Id. In connection with the propriety of the trial court's comments, the Appellate Court excused the remarks as a human expression of indignation and expressly refused to condemn them.[8] Id.

On appeal to this court, the defendant claims that any reliance on the newspaper article to increase the severity of his sentence was improper and that it was an abuse of discretion for the trial court to decline to recuse itself, pursuant to his request, following the court's comments that it had read the article and found it be to relevant to many of the sentencing considerations. Specifically, the defendant contends that the trial court's failure to recuse itself deprived him of his rights

---

[8] The Appellate Court stated that, "[a]s to the propriety of the court's comments, although we do not condone the court's choice of language, neither do we condemn it, as we are mindful that the trial court, and not [this court], heard the evidence and had its own opportunity to gauge the severity of the offenses and the quality of the defendant's remorse, if any, postconviction. Thus, although we expect the court to maintain a continuing demeanor of impartiality during trial, at sentencing, the court speaks as an agent of the community and as the voice of justice. That the court was human in expressing its indignation at the defendant will not be the cause of condemnation by this court." *State* v. *Eric M.*, supra, 79 Conn. App. 111.

to a fair trial before an impartial judge.[9] We disagree with the defendant that the trial court abused its discretion in considering the article for sentencing purposes. We also take this opportunity, however, to express our disapproval of the trial court's remarks at the sentencing hearing.

The gravamen of the defendant's claim is that the trial court made reference to information that was not part of the record and that, in commenting on that information, the court demonstrated its bias against him. We resolve this issue beginning with our well settled law on what a trial court may consider for sentencing purposes.

"A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. *United States* v. *Sweig*, 454 F.2d 181, 183–84 (2d Cir. 1972). . . . To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt; *United States* v. *Baylin*, 696 F.2d 1030, 1039 (3d Cir. 1982); [and] evidence of crimes for which the defendant was indicted but neither tried nor convicted; *United States* v. *Bowdach*, 561 F.2d 1160, 1175 (5th Cir. 1977) . . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . *United States* v. *Robelo*, 596 F.2d 868, 870 (9th Cir. 1979). Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circum-

---

[9] Although at trial the defendant couched the claim in first amendment terms, on appeal to this court he contends that the trial court's reliance on the article was a violation of his due process rights.

stances of the crime and to the convicted person's life and circumstance. *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972)."[10] (Citations omitted; internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 126–27, 505 A.2d 1242 (1986).

Nevertheless, "[t]he trial court's discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. *United States* v. *Baylin*, [supra, 696 F.2d 1040]. As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion. See *United States* v. *Campbell*, 684 F.2d 141, 154 (D.C. Cir. 1982); *United States* v. *Robelo*, supra, [596 F.2d 90]." *State* v. *Huey*, supra, 199 Conn. 127.

"To hold otherwise would be to adopt an unrealistic view of both the plea bargaining and sentencing processes, a view that would only deter judges from articulating their reasons for a particular sentence fully and prevent correction when the sentencing judge relied on

---

[10] The federal cases discussing the courts' discretion in sentencing determinations predate the implementation of the federal sentencing guidelines in 1987, which circumscribed the courts' discretion in such decisions. See *Payne* v. *Tennessee*, 501 U.S. 808, 820, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991); *United States* v. *Guevara*, 277 F.3d 111, 118 (2d Cir. 2001), cert. denied, 538 U.S. 936, 123 S. Ct. 1613, 155 L. Ed. 2d 337 (2003). These limitations, however, were imposed administratively pursuant to federal law; *United States* v. *Penaranda*, 375 F.3d 238, 244 (2d Cir. 2004); and do not bear on the constitutional issue discussed in the cases cited of whether due process may limit sentencing considerations.

information which was truly unreliable, inaccurate or patently wrong. Trial judges ought not be reprimanded for acknowledging on the record the impact of information they have gained in the plea bargaining or sentencing processes unless the use of such information confounds reason and a just result. See *United States* v. *Campbell*, supra, [684 F.2d 154]. Accordingly, when cases of this nature are heard on appeal, we should review the record to ensure that there is a persuasive basis for the conclusion reached by the sentencing court. [Id.] There is no simple formula for determining what information considered by a sentencing judge is sufficiently reliable to meet the requirements of due process. The question must be answered on a case by case basis. *United States* v. *Lemon*, 723 F.2d 922, 935 (D.C. Cir. 1983)." (Internal quotation marks omitted.) *State* v. *Huey*, supra, 199 Conn. 127–28.

Also relevant to our analysis is canon 3 (c) (1) of the Code of Judicial Conduct, which provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ." We have explained that "[t]he reasonableness standard is an objective one. [Therefore], the question is . . . whether a reasonable person would question the judge's impartiality on the basis of all the circumstances." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 460, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000).

In the present case, the defendant claims that a new sentencing hearing is required because the trial court improperly refused to recuse itself. According to the defendant, the court was influenced improperly in its

sentencing determination in part by the Hartford Advocate article that was not part of the record and not attributable to him. He claims that, because some knowledge on the part of the trial court was derived from an extrajudicial source, there is an appearance of bias, necessitating a new sentencing proceeding before a different judge. The defendant's claim fails for several reasons.

Although we have not had occasion to examine what has been branded "the 'extrajudicial source doctrine,'" the United States Supreme Court has labeled the term as "simply the pejorative connotation of the words 'bias or prejudice'"; *Liteky* v. *United States*, 510 U.S. 540, 550, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994); and has noted that, in reality, "there is not much doctrine to the doctrine." Id., 554. In holding that opinions formed by a judge as a result of his or her role in an earlier trial do not require disqualification unless the judge displays a level of bias that would make a fair trial impossible, the court explained: "The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a necessary condition for 'bias or prejudice' recusal . . . since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will not suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor*, than of an 'extrajudicial source' *doctrine*, in recusal jurisprudence." (Emphasis in original.) Id., 554–55.

Consistent with that approach, we must examine whether the "factor" in this case established bias. We examine that question in the context of the sentencing proceeding at issue, keeping in mind the trial court's

authority to consider information from sources outside of the judicial proceedings in determining the appropriate sentence. *State* v. *Huey*, supra, 199 Conn. 126. In previously addressing this issue, this court has held that "the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence." (Internal quotation marks omitted.) *State* v. *Anderson*, 212 Conn. 31, 49, 561 A.2d 897 (1989). Therefore, in deciding whether the extrajudicial source—the newspaper article—improperly prejudiced the trial court, we first must decide whether the information was reliable, because the information will be deemed prejudicial only if it is "somehow wrongful or inappropriate, either because it is undeserved or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree . . . ." *Liteky* v. *United States*, supra, 510 U.S. 550.

In the present case, the defendant has not established that the statements in the article attributed to him were materially false or unreliable. Significantly, he never disputed having made the statements to the author, nor did he take the opportunity to quarrel with the author's construal of his remarks. See *United States* v. *Bass*, 535 F.2d 110, 121 (D.C. Cir. 1976) (absence of denial itself provides important indicium of reliability). Nor did he seek a continuance to afford himself the opportunity to address the article. According to the trial court, the defendant's remarks that he was the real victim in the case and that his wife had framed him demonstrated a complete lack of accountability for the crimes of which he was convicted. From the statements in the article, the trial court reasonably could have drawn the inferences that the defendant was guilty, remorseless and dangerous, and that he had little prospect for reha-

bilitation. As the Appellate Court correctly noted; *State v. Eric M.*, supra, 79 Conn. App. 111; these conclusions properly may bear on sentencing. See *State* v. *Anderson*, supra, 212 Conn. 49–50.

Not only has the defendant proffered no evidence challenging the reliability of the author's statements at issue before this court, but, when the record is read as a whole, it is clear that the trial court did not rely substantially on any one piece of information when it determined the defendant's sentence. The court's conclusions about the defendant were based on its knowledge and observation of the defendant and the victim at trial, the presentence investigative report and addendum, the presentence psychological evaluation and the victim's impact statement, *as well as* the article. The article, therefore, served merely to enforce what the trial court reasonably already had concluded. Accordingly, the Appellate Court properly concluded that its use did not reflect judicial bias.

Finally, the defendant points to certain remarks by the trial court that he labels as being "intemperate and . . . demeaning." Although the defendant cites cases addressing claims of judicial impropriety occurring *in the jury's presenc*e that deprived defendants of their right to a fair trial,[11] those cases are inapposite because the jury was not present when the trial court in this case made the remarks at issue. It is also significant

---

[11] Specifically, the defendant cites to: *United States* v. *Saenz*, 134 F.3d 697 (5th Cir. 1998); *United States* v. *Donato*, 99 F.3d 426 (D.C. Cir. 1996); *Rivas* v. *Brattesani*, 94 F.3d 802 (2d Cir. 1996); *Derden* v. *McNeel*, 938 F.2d 605 (5th Cir. 1991), rev'd on reh. en banc, 978 F.2d 1453 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S. Ct. 2928, 124 L. Ed. 2d 679 (1993); *United States* v. *Victoria*, 837 F.2d 50 (2d Cir. 1988); and *Sparks* v. *State*, 740 So. 2d 33, review denied, 741 So. 2d 1137 (Fla. App. 1999). The one case cited by the defendant that involved comments by the trial court outside the jury's presence is clearly distinguishable in that the objectionable comments evinced ethnic prejudice. See *United States* v. *Edwardo-Franco*, 885 F.2d 1002, 1005–1006 (2d Cir. 1989).

that the defendant does not argue that the remarks here reveal any improper bias in and of themselves. Rather, he identifies the remarks *purely* as a product of the trial court's reliance on the article in connection with his claim that the court's consideration of the article was improper. In other words, the defendant claims that these remarks are evidence that the trial court was prejudiced against him because of its improper consideration of the article. We already have rejected, however, the premise underlying this argument.

Nevertheless, because we are offended by the trial court having resorted to this level of invective, we take this opportunity to voice this court's unwillingness to tolerate or excuse the trial court's remarks. Although the trial court reasonably was galled by the defendant's behavior and attitude, it was demeaning to the integrity of the judiciary to express its level of disgust by calling the defendant "a chump" and "a loser." Similarly, the trial court's remarks encouraging the victim to laugh at the defendant were intemperate. We cannot expect those who appear in court to behave with dignity and decorum if we do not lead by example.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.