******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ERIC M.* *v.* COMMISSIONER OF CORRECTION
(AC 35661)

DiPentima, C. J., and Alvord and Harper, Js.

*Argued September 23—officially released December 2, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Robert J. McKay*, assigned counsel, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Brian Preleski*, state's attorney, and, on the brief, *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Eric M., appeals following the summary judgment rendered in favor of the respondent, the Commissioner of Correction. On appeal, the petitioner claims that the habeas court improperly granted this motion. We disagree and affirm the judgment of the habeas court.

The record reveals the following facts and procedural history, which are relevant to our resolution of this appeal. "At all times relevant to this proceeding, the victim, S, and the [petitioner] were married. They separated in February, 2000, and divorce proceedings commenced. While the divorce was pending, the [petitioner] and the victim had agreed that the victim would reside in the marital home [in Southington] and the [petitioner] would stay at his parents' house.

"On May 9, 2001, the [petitioner] told the victim that he would come to the marital home the following day to mow the lawn. When the victim arrived home on May 10, 2001, she did not see the [petitioner's] car in the driveway. She entered the house and noticed that the entertainment center in the living room had been moved slightly and that the power was out in the room. When she went to the basement to check the fuse box, the [petitioner] pounced on her and placed her in a choke hold. He then pinned her down and forced her to put on handcuffs, threatening to choke her if she did not comply. The [petitioner] removed the victim's shirt and dressed her in jean shorts. He then tied her to a folding chair, using duct tape, rope and wire, and gagged her mouth with bandanas and rope.

"The [petitioner] left the victim tied to the chair despite her cries and pleas until, at some point, he allowed her to use a bathroom. While the victim remained handcuffed and gagged, the [petitioner] led her upstairs to the bathroom where he watched her use the toilet and then performed cunnilingus on her.

"The [petitioner] attempted to tie the victim to the toilet, but she was able to run into the living room where the [petitioner] tackled her on the couch. When she ran to the porch and attempted to open a storm door, the [petitioner] caught her, and choked her until she lost consciousness and fell through the glass storm door.

"Next, the [petitioner] brought the victim to the bedroom and tied her to the bed. When he left the room to clean up the broken glass from the shattered storm door, the victim was able to maneuver enough to dial 911 and to seek help from the telephone operator. Subsequently, the [petitioner] returned and pulled the telephone from the wall.

"Benjamin Doerfler, a police officer with the Southington police department, arrived at the victim's resi-

dence at 6:55 p.m. in response to the 911 call. He entered the residence through the porch door, and noticed broken glass and blood. He announced his presence and heard a female scream. He followed the scream to the bedroom, kicked open the door and saw the [petitioner] on top of the victim on the bed. The victim's hands and feet were bound, and she was crying and screaming. In conjunction with the arrest of the [petitioner], the police seized an eight millimeter videotape from a video camera in the basement depicting the events that took place in the basement on the day in question." (Internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 644–45, 858 A.2d 767 (2004).

After a jury trial, the petitioner was convicted of two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (C), and one count each of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), assault in the second degree in violation of General Statutes § 53a-60 (a) (1), and sexual assault in a spousal relationship in violation of General Statutes § 53a-70b (b). Id., 643. The court sentenced the petitioner to a total effective term of seventy-five years incarceration, suspended after twenty-two years, followed by thirty-five years of probation. Id., 647.

The petitioner filed a petition for a writ of habeas corpus on December 14, 2010. He then filed an amended petition on June 1, 2012.[1] The petitioner claimed that under current case law interpreting our kidnapping statute; *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008);[2] see *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), and superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009); see also *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011); he was deprived of his constitutional due process right to a fair trial because it was possible that the jury, if given a proper jury instruction, would not have found him guilty on the separate counts of kidnapping in the first degree. The petitioner then argued that because there was no *Salamon* instruction given at his criminal trial, the habeas court should have rendered judgment in his favor, vacated the conviction of both kidnapping counts, and ordered a new trial on those counts.

Both the petitioner and the respondent filed motions for summary judgment. The petitioner then filed an objection to the respondent's motion for summary judgment. The habeas court denied the petitioner's motion for summary judgment and granted the respondent's motion for summary judgment in a memorandum of decision on November 20, 2012. In granting the respondent's motion for summary judgment, the habeas court concluded that there was sufficient evidence in the trial

record to show that the restraints imposed on the victim were not incidental to any of the other crimes of which the petitioner was convicted and, therefore, any failure by the trial court in not giving the *Salamon* instruction was harmless beyond a reasonable doubt. The petitioner then filed a petition for certification to appeal on November 30, 2012, which the habeas court granted on April 4, 2013. We conclude that the habeas court properly rendered summary judgment in favor of the respondent and therefore affirm the judgment of the habeas court.

We begin with the standard of review. "The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Rogers* v. *Commissioner of Correction*, 143 Conn. App. 206, 210, 70 A.3d 1068 (2013). "Practice Book § 23-37 provides in relevant part that a habeas court may grant summary judgment if the pleadings, affidavits and any other evidence submitted show that there is no genuine issue of material fact between the parties requiring a trial and the moving party is entitled to judgment as a matter of law. On review from the granting of a motion for summary judgment, our task is to determine whether the court correctly determined that the moving party was entitled, as a matter of law, to summary judgment on the basis of the absence of any genuine issues of material fact requiring a trial. Because this inquiry requires a legal determination, our review is plenary." (Internal quotation marks omitted.) *Lawrence* v. *Commissioner of Correction*, 125 Conn. App. 759, 762, 9 A.3d 772 (2010).

On appeal, the petitioner claims that the habeas court erred in granting the respondent's motion for summary judgment. Specifically, the petitioner argues that the habeas court erred in its conclusion that the trial court's failure to give a *Salamon* instruction was harmless error beyond a reasonable doubt. We disagree.

To analyze the petitioner's claim, we must first analyze the decision by our Supreme Court in *Salamon*. Our Supreme Court in *Salamon* interpreted § 53a-92 (a) (2) (A) when it held that "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. The court explained further, there are instances where "a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the

other crime. Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the particular facts and circumstances of each case." (Footnote omitted.) Id., 547.

Stated differently, our Supreme Court "concluded that General Statutes § 53a-92 (a) (2) (A) does not impose liability for the crime of kidnapping where the restraint used is merely incidental to the commission of another offense." (Footnote omitted.) *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 742–43. The interpretation of § 53a-92 (a) (2) (A) in *Salamon* and *Sanseverino* narrowed the previous scope of liability under that statute. "[T]he appropriate remedy for the instructional impropriety identified in *Salamon* is to reverse the defendant's kidnapping conviction and to remand the case to the trial court for a new trial." *State* v. *DeJesus*, 288 Conn. 418, 434, 953 A.2d 45 (2008).

Our Supreme Court in *Luurtsema* held that the decisions in *Salamon* and *Sanseverino* apply retroactively to collateral attacks on final judgments. *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 760. Specifically, it stated, "we adopt a general presumption in favor of full retroactivity for judicial decisions that narrow the scope of liability of a criminal statute." Id., 764. As applied to currently incarcerated individuals, our Supreme Court concluded that "when an appellate court provides a new interpretation of a substantive criminal statute, an inmate convicted under a prior, more expansive reading of the statute presumptively will be entitled to the benefit of the new interpretation on collateral attack." Id., 760. The interpretation of § 53a-92 (a) (2) (A) in *Salamon* was six years subsequent to the petitioner's sentencing. Consequently, at his criminal trial the jury did not receive a *Salamon* instruction.

Despite the presumptive entitlement to the benefit of the new interpretation on collateral attack, as discussed in *Luurtsema*, our Supreme Court in that case declined "the petitioner's invitation to adopt a per se rule in favor of full retroactivity . . . because a review of the diverse contexts in which such challenges have arisen persuades us that there are various situations in which to deny retroactive relief may be neither arbitrary nor unjust." Id. If the absence of a *Salamon* instruction resulted in harmless error, then a remand for a new trial is not necessary.

Our Supreme Court in *Luurtsema* discussed the disposition of cases where the failure to give a *Salamon* instruction was harmless. "[W]e expect that courts will be able to dispose summarily of many cases where it is sufficiently clear from the evidence presented at trial that the petitioner was guilty of kidnapping, as properly defined, that any error arising from a failure to instruct the jury in accordance with the rule in *Salamon* was

harmless." Id., 769–70; see also *State* v. *Kitchens*, 299 Conn. 447, 458, 10 A.3d 942 (2011) ("the failure to give a *Salamon* instruction is not reversible error per se; it may be harmless on the facts of a particular case"); *State* v. *Hampton*, 293 Conn. 435, 463–64, 988 A.2d 167 (2009) (failure to give *Salamon* instruction harmless when facts showed no reasonable doubt that restraint of victim was not incidental to sexual assault and other crimes).

Our Supreme Court in *Hampton* set forth the test for determining whether the failure to give the *Salamon* instruction is harmless. "[T]he test for determining whether a constitutional [impropriety] is harmless . . . is whether it appears beyond a reasonable doubt that the [impropriety] complained of did not contribute to the verdict obtained." (Internal quotation marks omitted.) *State* v. *Hampton*, supra, 293 Conn. 463. We now turn to the present case to analyze whether the failure to give such instruction would result in harmless error, and conclude that in this instance, such failure was harmless beyond a reasonable doubt.

The following additional facts found by the habeas court are relevant to our analysis. "The evidence at trial shows that the incident began when the petitioner accosted the victim in the basement shortly after she arrived home at 2 p.m. and continued until the police arrived at some time near 7 p.m., a period of five hours. The only evidence of sexual assault to which the victim testified was where the petitioner performed oral sex upon her while she was restrained in the bathroom of the home. This assault, the victim testified, lasted a few minutes. Prior to the sexual assault, the victim testifies in detail about the long period of time the petitioner had her gagged and handcuffed while tied to a chair with duct tape around her ankles and rope and telephone cords around her arms, torso, neck and head at the beginning of the incident in the basement, how he left the home during that time to go hide a car. The victim's testimony also goes into detail as to how, toward the end of the incident, having been temporarily released from all restraints except handcuffs to use the bathroom, she attempted to escape through the living room out to the back porch. After a brief struggle with the petitioner on the couch, the victim was caught on the back porch and choked unconscious. She woke to find that she was being dragged back into the home, where she was tied to the bed in such a fashion that she could not unbend her legs after she tried to escape following the sexual assault in the bathroom." (Footnotes omitted; internal quotation marks omitted.) This second restraint did not cease until the police arrived, five hours after the initial restraint in the basement.

The facts surrounding the victim's kidnapping involve the victim being restrained, gagged, and handcuffed for a period spanning at least five hours. At some point

during this five hour period of restraint, about which the victim testified, the petitioner sexually assaulted her for a period that lasted only a few minutes. Such acts of restraint, which occurred both prior to and after the commission of the sexual assault, were not merely incidental to the commission of the sexual assault or any of the other crimes of which the petitioner was convicted. In this case, the facts surrounding the kidnappings and sexual assault implicate the analysis under *Hampton*. In *Hampton*, our Supreme Court agreed with the state that the lack of a *Salamon* instruction "was harmless because no reasonable juror could conclude that . . . the restraint necessary to commit the kidnapping was merely incidental to the restraint inherent in the sexual assault and other crimes charged against the defendant, which occurred nearly four hours after the kidnapping had taken place." (Emphasis omitted.) *State* v. *Hampton*, supra, 293 Conn. 456. Here, a review of the record leads us to the same conclusion.

The petitioner argues that his previous consensual bondage relationship with the victim should lead us to conclude that his entire course of conduct from approximately 2 p.m. to 7 p.m. was part of the sexual assault. The facts, as previously detailed, do not support this argument. Even if the victim had consented to bondage over the course of the marriage, the *Salamon* instruction would not have affected the finding by the jury at the criminal trial that the restraints and sexual assault on the date in evidence were not consensual. Given the magnitude and duration of the restraints on the victim, there was ample evidence for a jury to have found these acts committed by the petitioner to be separate, and not incidental to, the commission of the sexual assault or any of the other crimes of which the petitioner was convicted. Therefore, the failure to give a *Salamon* instruction was harmless beyond a reasonable doubt in this instance.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Although the petition fails to allege the specific legal grounds on which the petitioner claims he is entitled to relief, it is clear from the arguments made by both parties before this court and the briefs submitted that the petitioner's claim relates to his due process right to a fair trial.

[2] In *Salamon*, our Supreme Court narrowed and modified the definition of what the state must prove to convict a person of kidnapping when committed in conjunction with another crime, stating that "to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime." *State* v. *Salamon*, supra, 287 Conn. 542. The petitioner, whose criminal trial occurred six years prior to the decision in that case, seeks a retroactive application of the kidnapping definition to his case and for his case to be remanded for a new trial on the kidnapping counts.